UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ROSA URIARTE,<br><br>            Plaintiff,<br><br>   v.<br><br>JO ANNE B. BARNHART,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>            Defendant. | No. CV 05-1655-PLA<br><br><br>**MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on April 21, 2005, seeking review of the Commissioner's denial of her application for Supplemental Security Income payments.  The parties filed a Consent to proceed before the undersigned Magistrate Judge on May 31, 2005.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on February 27, 2006, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

II.

**BACKGROUND**

Plaintiff was born on May 20, 1951. [Administrative Record ("AR") at 42, 367.] She has a high school equivalency education and past relevant work experience as a warehouse worker. [AR at 53, 58, 367-68.]

On April 28, 2003, plaintiff filed an application for Supplemental Security Income payments, alleging that she had been unable to work since April 30, 1999, due to a back injury, neck problems, and depression. [AR at 42-45, 51-52.] After her application was denied, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on February 11, 2004, at which plaintiff appeared with a non-attorney representative and testified on her own behalf. [AR at 364-86.] A vocational expert also testified. [AR at 383-85.] On February 26, 2004, the ALJ determined that plaintiff was not disabled because she can perform a significant range of light work[1] with certain restrictions. [AR at 16-23.] When the Appeals Council denied review on January 7, 2005, the ALJ's decision became the final decision of the Commissioner. [AR at 4-7.]

III.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at

---

[1] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## THE EVALUATION OF DISABILITY

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

### A.   THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment

in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because she can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ concluded that plaintiff has not engaged in any substantial work activity since the alleged onset of her disability. [AR at 17, 22.] At step two, the ALJ concluded that plaintiff has the severe impairment of back pain, status-post L4-5/L5-S1 fusion. [Id.] At step three, the ALJ found that plaintiff's impairment does not meet or equal the requirements of any of the impairments in the Listings. [AR at 18, 22.] The ALJ further determined that plaintiff retains the residual functional capacity[2] to perform a significant range of light work with restrictions to only occasional climbing, balancing, stooping, crouching, or crawling. [AR at 19, 22.] At step four, the ALJ determined that plaintiff is unable to perform any of her past relevant work. [AR at 20.] At step five, the ALJ concluded that based on plaintiff's residual functional capacity, age, education, and past relevant work experience, there are a significant number of jobs in the national economy that she can perform. [AR at 21-22.] Accordingly, the ALJ found plaintiff not disabled. [AR at 21, 23.]

---

[2]   Residual functional capacity ("RFC") is what a claimant can still do despite existing exertional and nonexertional limitations. Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

## V.

## **THE ALJ'S DECISION**

Plaintiff contends that the ALJ failed to: (1) properly evaluate the opinion of treating physician Dr. Hillel Sperling; (2) properly evaluate the severity of her mental impairment; and (3) properly evaluate her subjective allegations of pain. Joint Stipulation ("Joint Stip.") at 2. Because the Court agrees with plaintiff that the ALJ failed to properly consider Dr. Sperling's medical opinion, the Court reverses the ALJ's decision and remands for further proceedings.

According to the record, plaintiff sustained work-related spinal injuries on April 30, 1999, and again on June 1, 1999. [AR at 212.] She was treated by Dr. Sperling, an orthopedic surgeon, for workers' compensation purposes over a period spanning almost two years, from August 1999 through July 2001, during which she underwent an operation on her spine. [See AR at 158-217.] Throughout most of this time, Dr. Sperling found plaintiff to be "temporarily totally disabled" while he continued to observe her treatment and response to therapy. Dr. Sperling ultimately performed an orthopaedic evaluation of plaintiff on September 5, 2001, and found that her condition had reached "a permanent and stationary status."[3]  [AR at 154-57.] The results of the September 5, 2001, examination show that plaintiff was given the following diagnosis: cervical sprain and "status post posterolateral spine fusion with iliac crest bone graft and instrumentation." [AR at 155.] Dr. Sperling set forth the following work restrictions: no heavy lifting, no repetitive head movements or use of either upper extremity at or above shoulder level, no "substantial work," and no prolonged sitting, standing or walking. [AR at 156.]

The record also contains a report summarizing plaintiff's July 10, 2003, orthopaedic examination performed by Dr. Frederick Workmon. [AR at 131-35.] Dr. Workmon diagnosed plaintiff with "status post two-level discectomy with residual L5 sensory radicular symptoms," and opined that she would be capable of lifting twenty pounds occasionally and ten pounds frequently,

---

   [3]   In workers' compensation parlance, a disability is deemed permanent and stationary when "the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change substantially in the next year with or without medical treatment." Cal. Code Regs. tit. 8, § 10152.

standing and walking for six hours in an eight-hour day with normal rest periods, and sitting for six hours in an eight-hour day with normal rest periods. [AR at 134-35.] The State Agency physicians essentially adopted these same restrictions in the July 18, 2003, physical residual functional capacity assessment. [AR at 138-45.]

In the decision, the ALJ considered Dr. Sperling's treatment records, and commented that the doctor "usually made only vague medical assessments such as 'temporarily totally disabled' but qualifying that he was 'not yet able to determine [plaintiff's] permanent return to work status or whether there will be any residual permanent disability.'" [AR at 19.] The ALJ further noted Dr. Sperling's September 6, 2001, opinion that plaintiff is precluded from heavy lifting, repetitive hand movements, the use of either upper extremity at or above shoulder level, and prolonged sitting, standing, or walking. [Id.]

The ALJ went on to assess plaintiff's RFC, and concluded that she was capable of performing a significant range of light work with restrictions of occasional climbing, balancing, stooping, crouching, or crawling.[4] [AR at 19.]  According to the Regulations, a job in the light work category may require "a good deal of walking or standing," and could involve "sitting most of the time" with some pushing and pulling of leg or arm controls. 20 C.F.R. §§ 404.1567(b), 416.967(b). When an applicant can do light work, it is assumed that she can also do sedentary work, "unless there are additional limiting factors such as ... inability to sit for long periods of time." Id. In turn, a sedentary job[5] is defined "as one which involves sitting, [although] a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met." 20 C.F.R. §§ 404.1567(a), 416.967(a).  Social Security Ruling 96-9p[6] explains that sedentary jobs generally

---

[4] The ALJ also found that plaintiff had no "severe" mental impairment, and thus no mental limitations were imposed. [AR at 17.]

[5] Sedentary work is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. §§ 404.1567(a), 416.967(a).

[6] Social Security Rulings do not have the force of law.  Nevertheless, they "constitute Social Security Administration interpretations of the statute it administers and of its own regulations," and
6

require no more than two hours of walking and standing in an eight-hour workday, while sitting would generally be required for six hours.

In making the RFC determination, the ALJ stated that it was based upon "the totality of medical opinions in the record best supported by objective signs and laboratory findings of a longitudinal nature, none of which found [plaintiff] to be precluded from all work for 12-continuous months." [AR at 19.]

Plaintiff asserts that the ALJ failed to properly translate Dr. Sperling's conclusions made for workers' compensation purposes into appropriate terminology for social security cases, and that the ALJ failed to provide any legally sufficient reasons for rejecting Dr. Sperling's opinion. See Joint Stip. at 5-8. The Court agrees.

In evaluating medical opinions, the case law and regulations distinguish among three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). See 20 C.F.R. §§ 404.1502, 416.927; Lester, 81 F.3d at 830. As a general rule, more weight should be given to the opinion of a treating physician than to the opinions of doctors who do not treat the plaintiff. Lester, 81 F.3d at 830; see also Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996) ("Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians.").

"However, an ALJ need not give controlling weight to the opinion of a treating physician." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194-95 (9th Cir. 2004). "The treating physician's opinion is not ... necessarily conclusive as to ... the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citations omitted). "The ALJ may disregard the treating physician's opinion whether or not that opinion is contradicted." Batson, 359 F.3d at 1159 (quoting Magallanes, 881 F.2d at 751). Where the record contains conflicting

---

are given deference "unless they are plainly erroneous or inconsistent with the Act or regulations." Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989).

medical evidence, the ALJ is charged with determining credibility and resolving the conflict. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). When the treating physician's opinion is not uncontroverted, the ALJ may reject it by setting forth specific and legitimate reasons for doing so which are based on substantial evidence in the record. Smolen, 80 F.3d at 1285.

As an initial matter, the Court notes that, although Dr. Sperling's restrictions of no "prolonged" sitting, standing, and walking were used in his evaluation for plaintiff's workers' compensation case, the ALJ was required to evaluate this terminology like any other medical opinion. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1105 (C.D.Cal. Jan. 22, 2002); see also Coria v. Heckler, 750 F.2d 245, 247 (3rd Cir. 1984) ("the ALJ should evaluate the objective medical findings set forth in the medical reports for submission with the worker's compensation claim by the same standards that s/he uses to evaluate medical findings in reports made in the first instance for the Social Security claim"); Bosley v. Shalala, 879 F.Supp. 296, 304 (W.D.N.Y. March 9, 1995) ("the ALJ was *not* entitled to ... disregard, or neglect to articulate reasons for rejecting, either the opinions or the objective medical findings contained in" the treating doctor's report, even though the report was prepared for workers' compensation purposes). Accordingly, the ALJ must "'translate' [workers' compensation] terms of art" to correspond to Social Security terminology. Booth, 181 F.Supp.2d at 1106. The translation need not be explicit, but "it should at least indicate that the ALJ recognized the differences between the relevant state workers' compensation terminology, on the one hand, and the relevant Social Security disability terminology, on the other hand, and took those differences into account in evaluating the medical evidence." Id.

Despite the fact that Dr. Sperling did not define what he meant by his use of the term "prolonged" in imposing plaintiff's standing, sitting, and walking restrictions, this reference has been reasonably interpreted to mean a duration lasting for "at least half of the work day." See Booth, 181 F.Supp.2d at 1108 (stating "[i]t is logical to assume that [the treating doctor's] reference to 'prolonged' sitting means sitting at least half of the work day"). Assuming that interpretation is correct, Dr. Workmon's opinion -- as well as the State Agency physicians' opinion and the ALJ's determination of plaintiff's functional capacity -- that plaintiff would be able to sit for

six hours and stand and walk for six hours conflicts with Dr. Sperling's contrary findings. See id. (stating "it would be difficult to argue convincingly that sitting for six hours during an eight-hour day does not qualify as 'prolonged' sitting").

Here, the ALJ did not offer the requisite "translation" regarding Dr. Sperling's opinion that plaintiff is precluded from "prolonged" sitting, standing, and walking. Nor did the ALJ provide any interpretations of or conclusions concerning Dr. Sperling's other work restrictions (i.e., no repetitive head movements or use of either upper extremity at or above shoulder level, and no "substantial work"). Although not expressly articulated in the decision, it is apparent that the ALJ relied upon the consultative examiner's and State Agency physicians' opinions in determining the RFC that plaintiff was capable of light work (which, as discussed supra, involves jobs that may require a good deal of walking or standing, or sitting most of the time, and implies that plaintiff is also capable of sedentary work).[7] In doing so, the ALJ effectively rejected Dr. Sperling's opinion regarding plaintiff's work limitations. See Smith v. Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in making a finding, which differs from that of another physician, is an implicit rejection of the latter).

It appears from the decision that the ALJ discredited Dr. Sperling's opinion at least in part because, according to the ALJ, he made "only vague medical assessments such as 'temporarily totally disabled.'" [AR at 19.] The Court finds this to be a legally insufficient reason for rejecting the opinion as it ignores the fact that, after Dr. Sperling determined in September 2001 that plaintiff's condition had reached "permanent and stationary" status, he set forth specific work restrictions. Thus, while Dr. Sperling did characterize plaintiff's condition as "temporarily totally disabled" up until September 2001 and therefore withheld setting forth her permanent work restrictions, he ultimately issued a specific opinion on September 6, 2001, that included such limitations. The ALJ summarized these specific work restrictions in the decision. Accordingly, in light of the September 6, 2001, report, the ALJ's characterization of Dr. Sperling's opinion as

---

[7] "[T]he Commissioner has expressly stated that a person who is unable to sit for prolonged periods of time is incapable of engaging in the full range of sedentary work." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001).

1  "vague" has no support. [AR at 22.] The ALJ offered no other specific reasons to substantiate the
2  rejection of Dr. Sperling's findings.
3       Because the ALJ did not expressly interpret or discuss the conflict in the medical evidence
4  between Dr. Sperling's opinion and the opinions of the consultative examiner and State Agency
5  physicians, or otherwise explain why plaintiff was capable of light work despite Dr. Sperling's
6  findings, it follows that the ALJ did not provide any specific and legitimate reasons based on
7  substantial evidence in the record for rejecting Dr. Sperling's opinion. See Cotter v. Harris, 642
8  F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no
9  reason or the wrong reason [citation omitted], an explanation from the ALJ of the reason why
10 probative evidence has been rejected is required so that a reviewing court can determine whether
11 the reasons for rejection were improper."). Accordingly, remand on this issue is appropriate to
12 allow the ALJ to properly interpret and weigh Dr. Sperling's opinion regarding plaintiff's ability to
13 perform work. See Magallanes, 881 F.2d at 751; see also 20 C.F.R. §§ 404.1527(d)(2),
14 416.927(d)(2) (Commissioner will "always give good reasons in our notice of determination or
15 decision for the weight we give your treating source's opinion.").
16      Furthermore, upon remand, the ALJ should also determine if plaintiff's belatedly submitted
17 medical evidence regarding the severity of her alleged mental impairment is material and if good
18 cause exists warranting its consideration. See Embrey v. Bowen, 849 F.2d 418, 423-24 (9th Cir.
19 1988) (new evidence may be considered that is material, and where good cause exists for the
20 failure to incorporate the evidence into the record of the prior proceeding).
21      Because the ALJ's consideration of Dr. Sperling's opinion may impact other portions of the
22 disability analysis, such as the formulation of the RFC and the credibility determination, plaintiff's
23 remaining arguments will not be addressed herein.
24 /
25 /
26 /
27 /
28 /

## VI.

## **REMAND FOR FURTHER PROCEEDINGS**

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate to: (1) evaluate and weigh Dr. Sperling's opinion regarding plaintiff's work restrictions; (2) if Dr. Sperling's opinion is not properly discredited, reconsider plaintiff's RFC in light of those restrictions; and (3) determine whether plaintiff's new medical evidence regarding the severity of her alleged mental impairment is material and warrants consideration. The ALJ is directed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **GRANTED**; (2) the decision of the Commissioner is **REVERSED**; and (3) this action is **REMANDED** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 27, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE